UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| VINES OF ARGENTINA, LLC., and VINOTOURISM ARGENTINA SRL, a Delaware corporation,<br><br>                    Plaintiffs,<br><br>          v.<br><br>BBI ARGENTINA, NADIA BINESH, and FRANCISCO EVANGELISTA, an individual.<br><br>                    Defendants. | CASE NO. 2:22-cv-1619<br><br>ORDER GRANTING EX PARTE MOTION FOR ALTERNATIVE SERVICE |

**INTRODUCTION**

This matter comes before the Court on Plaintiffs' <u>ex parte</u> Motion for Alternative Service of Process. (Dkt. No. 13.) Having reviewed the Motion and all supporting documents, the Court GRANTS Plaintiffs' motion.

## BACKGROUND

**A.      The Dispute**

Plaintiffs Vines of Argentina, LLC, Vines of Argentina International, LLC, and Vinotourism Argentina SRL (together, "Vines") offer a global customer base the "opportunity to realize their dreams of owning their own vineyard and producing their own wine in the world-renowned wine-producing region of the Uco Valley, Argentina." (Compl. ¶ 8.) Customers may do so by purchasing plots of an Argentine vineyard and professional services related to wine making. (Id.) Over the past 20 years, Vines has spent considerable time and effort to develop a database of current and potential customers while serving 274 clients and operating a luxury resort located within the vineyard. (Id. ¶¶ 9–12.)

Defendant Francisco Evangelista was a former Vines agronomist who transitioned to the Vines sales team in 2017, where he worked with Vines's database of potential customers. (Compl. ¶¶ 11, 14.) In September 2018, Evangelista was terminated by Vines and refused to return his company computer—containing Vines customer lists and contact information—for several months. (Id. ¶ 15.) In April 2019, Vines and Evangelista entered into an "agreement to resolve outstanding disputes," which prohibited the latter from using Vines's proprietary information—including client lists—and contained a two-year non-compete clause and a confidentiality clause. (Id. ¶¶ 16–17.)

Vines alleges that shortly after his termination, Evangelista began working for BBI. (Compl. ¶ 19.) Within a year, BBI began to offer professional services similar to those offered by Vines. (Id.) In 2020, BBI started to directly solicit Vines's customers, including one customer located in this district, asking them to resell their lots located in the Vines's vineyard. (Id. ¶¶ 20–21.)

1        Vines then brought suit against BBI, Binesh, and Evangelista.

2   **B.      Service**

3        On January 12, 2023, nearly two months after Vines filed its complaint, the Court stayed

4   proceedings for six months or until Vines effectuated service upon the foreign defendants under

5   Federal Rule of Civil Procedure 4(f)(1). (Dkt. No. 5.) Both Canada and Argentina are signatories

6   to the Hague Convention and have acceded to the Hague Convention on the Service Abroad of

7   Judicial and Extrajudicial Documents in Civil or Commercial Matters (the "Hague Convention").

8   See HCCH, Status Table (March 21, 2024) available at

9   https://www.hcch.net/en/instruments/conventions/status-table/?cid=17 (last visited September 5,

10  2024). But service of process under the Hague Convention takes time; the Court twice extended

11  the stay to allow for service of all of the foreign Defendants. (See July 24, 2023, Order

12  Extending Stay (Dkt. No. 10) & February 2, 2024, Order Extending Stay (Dkt. No. 12).)

13       After nearly 21 months, Vines claims to have successfully served Evangelista. (See Mot.

14  at 3; Dkt. No. 8 at 1–2.) However, Vines has had no such luck in serving the Canadian

15  Defendants despite following the guidelines found in the Hague Convention. Vines first found

16  business addresses for both Canadian Defendants but does not appear to have looked for (or

17  found) a home address for Binesh. (Declaration of Kenneth R. Davis II ¶¶ 3–4, 8, 11 (Dkt. No.

18  14).) Vines then hired a Canadian process server to facilitate service on the Canadian Defendants

19  at the identified business addresses by serving the Canadian Central Authority. (Davis Decl. ¶ 3.)

20       The Central Authority received the requests for service on February 3, 2023, (see Dkt.

21  No. 8 at 2,) but took "longer than expected" to attempt service on the Canadian Defendants.

22  (Mot. at 3.) Canadian Central Authority told the process server on January 15, 2024, that they

23  were unable to serve BBI Argentina at the provided business address. (Davis Decl. ¶ 7.) It

24

1   appears that the address provided for BBI Argentina—1240 Bay Street, Suite 305, Toronto,

2   Ontario, M5R 3N7, Canada—belonged to a different company. (Davis Decl. Ex. 6 (the process

3   server noting that the address was for "Phone Box" with no forwarding address to BBI

4   Argentina).) Then on February 21, 2024, the Central Authority reported that they were unable to

5   serve Binesh at the provided business address—1300 Yonge Street, Suite 100, Toronto, Ontario,

6   M4T 1X3, Canada. (Id.)

7        Vines now moves for alternative service of the Canadian Defendants. Specifically, Vines

8   seeks an order permitting them to serve the Canadian Defendants with the Complaint "via

9   electronic mail, addressed to Vineyards@BBIArgentina.com, nbinesh@bbiargentina.com, and

10  robert@bbiargentina.com, with additional copies sent by postal mail addressed to 1240 Bay

11  Street, Suite 305, Toronto, Ontario, M5R 3N7, Canada and 1300 Yonge Street, Suite 100,

12  Toronto, Ontario, M4T 1X3, Canada." (Mot at 1.)

13  **ANALYSIS**

14  **A.    Legal Standard**

15       Federal Rule of Civil Procedure Rule 4(f) provides the rules for service on an individual

16  in a foreign country. The Rule states in relevant part that "[u]nless federal law provides

17  otherwise, an individual . . . may be served at a place not within any judicial district of the

18  United States: (1) by any internationally agreed means of service that is reasonably calculated to

19  give notice, such as those authorized by the Hague Convention on the Service Abroad of Judicial

20  and Extrajudicial Documents ("Hague Convention"); . . . [or] (3) by other means not prohibited

21  by international agreement, as the court orders." Fed. R. Civ. P. 4(f). Rule 4(f)(1) implements the

22  Hague Convention's authorization of service of process through a Central Authority, but "does

23  not go beyond means of service affirmatively authorized by international agreements."

24

ORDER GRANTING EX PARTE MOTION FOR ALTERNATIVE SERVICE - 4

1    Brockmeyer v. May, 383 F.3d 798, 804 (9th Cir. 2004). Meanwhile, Rule 4(f)(3) "serves as a

2    safety valve for unanticipated situations," including when an exception to the Convention

3    applies. See 4B Charles A. Wright, Arthur R. Miller & Adam N. Steinman, Federal Practice and

4    Procedure § 1133 (4th ed. June 2024 update).

5    **B.    Alternative Service on Canadian Defendants**

6          Vines argues that alternative service via postal mail and email is necessary in this case, as

7    they have been unable to serve the Canadian Defendants through the means provided by the

8    Hague Convention. (Mot. at 1–2.) The Court agrees.

9          Rule 4(f)(3) allows for an alternative method of service if it is "(1) directed by the court;

10   and (2) not prohibited by international agreement." Rio Props., Inc. v. Rio Int'l Interlink, 284

11   F.3d 1007, 1014 (9th Cir. 2002). "[T]rial courts have authorized a wide variety of alternative

12   methods of service including publication, ordinary mail, mail to the defendant's last known

13   address, delivery to the defendant's attorney, telex, and most recently, email." Id. at 1016.

14         Service by mail is not prohibited by an international agreement with Canada. See Water

15   Splash, Inc. v. Menon, 581 U.S. 271 (2017). And although courts are split as to whether service

16   via email upon a foreign defendant is prohibited under Hague Convention, other courts in this

17   district have found no such restriction. See, e.g., Akerson Enterprises LLC v. Shenzhen Conglin

18   E-Com. Co., No. 24-CV-00506, 2024 WL 3510934, at *3 (W.D. Wash. July 23, 2024).

19   Therefore, to obtain a court order under Rule 4(f)(3), Vines must "demonstrate that the facts and

20   circumstances of the present case necessitated the district court's intervention." Rio, 284 F.3d at

21   1016.

22         The Court finds that the facts and circumstances in this case necessitate alternative

23   service. Vines's attempts to serve the Canadian Defendants through the Hague Convention (in

24

1   accordance with Rule 4(f)(1)) have been thus far unavailing. Meanwhile, the Canadian

2   Defendants continue to benefit from the alleged stolen trade secrets. (See Davis Decl. Ex. 9 (a

3   BBI solicitation email from June 2024 discussing "some of the most aggressive pricing ever

4   offered for re-sale vineyard lots at The Vines.").) The Court finds that alternative service upon

5   the Canadian Defendants is necessary to allow Vines to begin to prosecute their claims, which

6   have been pending for the better part of two years.

7           Furthermore, the Court finds that Vines's proposed method of alternative service, both

8   email and postal mail, is appropriate. This boot-and-suspenders approach to alternative service

9   was approved of by the Ninth Circuit in Rio, which affirmed an order allowing service of an

10  elusive defendant via both email and postal mail on the basis that doing so would "ensure the

11  smooth functioning of our courts of law." 284 F.3d at 1016. Nor must Vines "have attempted

12  every permissible means of service of process," such as attempting service of Defendant Binesh

13  at her home address, "before petitioning the court for alternative relief." Id.

14  **C.      Due Process**

15          Vines argues that service of the Canadian Defendants via postal mail or email comports

16  with due process. (Mot. at 6.) The Court agrees.

17          "[A] method of service of process [approved of under Rule 4(f)(3)] must also comport

18  with constitutional notions of due process." Rio, 284 F.3d at 1016. "To meet this requirement,

19  the method of service crafted by the district court must be 'reasonably calculated, under all the

20  circumstances, to apprise interested parties of the pendency of the action and afford them an

21  opportunity to present their objections.'" Id. at 1016–17 (quoting Mullane v. Cent. Hanover

22  Bank & Trust Co., 339 U.S. 306, 314 (1950)).

23

24

1    The Court finds that Vines's proposed method of alternative service satisfies due process

2    concerns it is "reasonably calculated . . . to apprise [the Canadian Defendants] of the pendency of

3    the action and afford [them] an opportunity to respond." <u>See</u> <u>Rio</u>, 284 F.3d at 1017. First, service

4    via email is appropriate as to BBI because the business's primary email address,

5    Vineyards@BBIArgentina.com, is still in active use. BBI's identifies the email address on its

6    own website. <u>See</u> Contact Us, https://bbiargentina.com/contact/ (last visited Sept. 9, 2024). And

7    the email is still functional and in use to solicit clients on behalf of the business. (<u>See</u> Davis

8    Decl. Ex. 10.) For those reasons, the Court is satisfied that service via email on BBI comports

9    with due process. <u>See, e.g.</u>, <u>Vivic</u> at 2024 WL 2978148, at *3 (authorizing service via email after

10   concluding that identified email account was still active for use in defendant's business). Second,

11   the Court service via email and postal mail is reasonably calculated to apprise Binesh of the

12   pending lawsuit. The identified email, Binesh@BBIArgentina.com, is active as evidenced by it

13   responding to emails sent to the Vinyards@BBIArgentina.com email address. (<u>See</u> Davis Decl.

14   Exs. 9–10.)  Additionally, the Court finds that service through postal mail upon Binesh using her

15   work address at 1300 Yonge St. is also reasonably calculated to provide Binesh with notice

16   because she relies upon that address in both her professional and personal online listings. (Davis

17   Decl. Exs. 1–3.)

18                                                **CONCLUSION**

19           The Court finds that alternative service is warranted to allow Vines to serve the Canadian

20   Defendants. Service via postal mail and email is appropriate, not prohibited by any international

21   treaty with Canada, and reasonably calculated to provide the Canadian Defendants with notice of

22   the claims against them. Therefore, the Court GRANTS Vines's motion for alternative service.

23

24

1          Vines is authorized to serve the Canadian Defendants via email at

2    Vineyards@BBIArgentina.com, nbinesh@bbiargentina.com, and robert@bbiargentina.com, and

3    via postal mail addressed to (1) 1240 Bay Street, Suite 305, Toronto, Ontario, M5R 3N7,

4    Canada; and (2) 1300 Yonge Street, Suite 100, Toronto, Ontario, M4T 1X3, Canada.

5          Vines is further ORDERED to complete service and file proof of service by September

6    25, 2024.

7          The clerk is ordered to provide copies of this order to all counsel.

8          Dated September 13, 2024.

9

10                            Marsha J. Pechman
                                 United States Senior District Judge