UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| VINES OF ARGENTINA, LLC., and VINOTOURISM ARGENTINA SRL, | CASE NO. 2:22-cv-1619 |
| Plaintiff, | DISMISSAL ORDER |
| v. | |
| BBI ARGENTINA, NADIA BINESH, and FRANCISCO EVANGELISTA, | |
| Defendants. | |

This matter comes before the Court on Defendants BBI Argentina and Nadia Binesh's Motion to Dismiss for Lack of Personal Jurisdiction (Dkt. No. 29.) Having reviewed the motion, Plaintiffs Vines of Argentina, LLC, Vines of Argentina International, LLC, and Vinotourism Argentina, SRL's opposition (Dkt. No. 35), the reply (Dkt. No. 37), the Parties' presentations during oral argument (see Dkt. No. 38), and all other supporting materials, the Court GRANTS the Motion.

**BACKGROUND**

Vines offers a global customer base the "opportunity to realize their dreams of owning their own vineyard and producing their own wine in the world-renowned wine-producing region of the Uco Valley, Argentina." (Complaint (Dkt. No. 1) ¶ 8.) Customers may do so by purchasing plots of an Argentine vineyard and professional services related to wine making. (Id.) Over the past 20 years, Vines has spent considerable time and effort to develop its customer list, and has grown to serve 274 customers, and operates a luxury resort located within the vineyard. (Id. ¶¶ 9–12.)

Francisco Evangelista—formerly a named Defendant in this case—was an Argentinian agronomist who worked for Vines, including as a member of the sales team. In that role, Evangelista had access to Vines' database of potential customers. (Compl. ¶¶ 11, 14.) In September 2018, Evangelista was terminated by Vines and refused to return his company computer—containing Vines customer lists and contact information—for several months. (Id. ¶ 15.) In April 2019, Vines and Evangelista entered an "agreement to resolve outstanding disputes," which prohibited the latter from using the former's proprietary information, including client lists, and contained a two-year non-compete clause and a confidentiality clause. (Id. ¶¶ 16–17.)

Vines alleges that shortly after his termination, Evangelista began working for BBI Argentina. (Compl. ¶ 19.) Within a year, BBI Argentina began to offer professional services similar to those offered by Vines. (Id.) In 2020, BBI Argentina allegedly began to solicit Vines' customers—including one located in Washington—through mass solicitation emails asking them to resell their lots located in the Vines' Argentinian vineyard. (Id. ¶¶ 20–21.)

1    Vines then filed this lawsuit against BBI Argentina, Binesh, and Evangelista. Vines and

2    Defendant Evangelista settled their dispute, (see Dkt. No. 26,) and the remaining Defendants

3    now seek to dismiss the complaint, (Dkt. No. 29.)

### ANALYSIS

**A.    Legal Standard**

6    "Where a defendant moves to dismiss a complaint for lack of personal jurisdiction, the

7    plaintiff bears the burden of demonstrating that jurisdiction is appropriate." Schwarzenegger v.

8    Fred Martin Motor Co., 374 F.3d 797, 800 (9th Cir. 2004). Unless there has been an evidentiary

9    hearing, the plaintiff's pleadings and affidavits must "make a prima facie showing of personal

10   jurisdiction." Id. (quoting Caruth v. Int'l Psychoanalytical Ass'n, 59 F.3d 126, 128 (9th Cir.

11   1995)). "[T]he plaintiff need only demonstrate facts that if true would support jurisdiction over

12   the defendant," Ballard v. Savage, 65 F.3d 1495, 1498 (9th Cir. 1995), but cannot "simply rest

13   on the bare allegations of its complaint," Amba Mktg. Sys., Inc. v. Jobar Int'l, Inc., 551 F.2d

14   784, 787 (9th Cir. 1977).

15   There are two types of personal jurisdiction: general and specific. Bristol-Myers Squibb

16   Co. v. Superior Ct., 582 U.S. 255, 262 (2017). General jurisdiction "enables a court to hear cases

17   unrelated to the defendant's forum activities . . . if the defendant has 'substantial' or 'continuous

18   and systematic' contacts with the forum." Brand v. Menlove Dodge, 796 F.2d 1070, 1073 (9th

19   Cir. 1986) (quoting Haisten v. Grass Valley Med. Reimbursement Fund, Ltd., 784 F.2d 1392,

20   1396 (9th Cir. 1986)). Meanwhile, specific jurisdiction requires that the suit "arise out of or

21   relate to the defendant's contacts with the forum," which requires "an 'affiliation between the

22   forum and the underlying controversy.'" Bristol-Myers, 582 U.S. at 262 (cleaned up) (quoting

23   Daimler AG v. Bauman, 571 U.S. 117, 127 (2014)); Goodyear Dunlop Tires Operations, S.A. v.

24

1    <u>Brown</u>, 564 U.S. 915, 919 (2011) (cleaned up). "For this reason, 'specific jurisdiction is confined

2    to adjudication of issues deriving from, or connected with, the very controversy that establishes

3    jurisdiction.'" <u>Bristol-Myers</u>, 582 U.S. at 262 (quoting <u>Goodyear</u>, 564 U.S. at 919).

4          Defendants' motion focuses on specific personal jurisdiction. Defendants argue that the

5    Court "cannot exercise general personal jurisdiction over Defendants" because Defendants do

6    not have the requisite "substantial" or "continuous and systematic" contacts with the Western

7    District of Washington. (Mot. at 5, 8.) Plaintiffs do not argue otherwise in their response, nor

8    does the Complaint allude to general personal jurisdiction in the jurisdictional statement. (<u>See</u>

9    Complaint (Dkt. No. 1) at 2.) Therefore, the Court's analysis of Defendants' motion will be

10   limited to specific personal jurisdiction either the traditional personal jurisdiction analysis, <u>see</u>

11   <u>Bristol-Myers</u>, 582 U.S. at 262, or under the federal long-arm statute, Federal Rule of Civil

12   Procedure 4(k)(2). Because the test for federal long-arm jurisdiction under Rule 4(k)(2) is

13   "nearly identical" to the traditional personal jurisdiction analysis (except that the court considers

14   "contacts with the nation as a whole" as opposed to those with the state in which the court

15   resides), the Court analyzes both specific jurisdictional challenges together. <u>Holland Am. Line,</u>

16   <u>Inc. v. Wartsila N. Am., Inc.</u>, 485 F.3d 450, 462 (9th Cir. 2007).

17   **B.    Specific Jurisdiction**

18          "There are three requirements for a court to exercise specific jurisdiction over a

19   nonresident defendant: (1) the defendant must either 'purposefully direct his activities' toward

20   the forum or 'purposefully avail himself of the privileges of conducting activities in the forum';

21   (2) 'the claim must be one which arises out of or relates to the defendant's forum-related

22   activities'; and (3) "the exercise of jurisdiction must comport with fair play and substantial

23   justice, i.e. it must be reasonable." <u>Axiom Foods, Inc. v. Acerchem Int'l, Inc.</u>, 874 F.3d 1064,

24

1 | 1068 (9th Cir. 2017) (cleaned up) (quoting <u>Dole Food Co., Inc. v. Watts</u>, 303 F.3d 1104, 1111

2 | (9th Cir. 2002). "The plaintiff bears the burden of satisfying the first two prongs of the test."

3 | <u>Schwarzenegger</u>, 374 F.3d at 802. If successful, "the burden then shifts to the defendant to

4 | 'present a compelling case' that the exercise of jurisdiction would not be reasonable." <u>Id.</u>

5 | (quoting <u>Burger King Corp. v. Rudzewicz</u>, 471 U.S. 462, 476-78 (1985)).

6 |         1.    **Purposeful Direction**

7 |         The Parties agree that Plaintiffs' claims against Defendants sound classically in tort and

8 | are therefore most naturally analyzed under the "purposeful direction" test derived from <u>Calder</u>

9 | <u>v. Jones</u>, 465 U.S. 783 (1984). (<u>See</u> Mot. at 13–16; Resp. at 5.) To evaluate purposeful direction

10 | under <u>Calder</u>, the Court considers whether the defendant (1) "committed an intentional act" that

11 | was (2) "expressly aimed at the forum" and (3) "caus[ed] harm" that it knew was "likely to be

12 | suffered in the forum state." <u>Axiom</u>, 874 F.3d at 1069 (9th Cir. 2017) (quoting <u>Wash. Shoe Co.</u>

13 | <u>v. A-Z Sporting Goods Inc.</u>, 704 F.3d 668, 673 (9th Cir. 2012)).

14 |         a.    **Intentional Act.**

15 |         For the purposes of personal jurisdiction, a defendant acts intentionally when it acts with

16 | "an intent to perform an actual, physical act in the real world, rather than an intent to accomplish

17 | a result or consequence of that act." <u>Schwarzenegger</u>, 374 F.3d at 806. Operating a passive

18 | website, purchasing a domain name, or purchasing domain privacy services are considered

19 | intentional acts. <u>See</u> <u>Will Co. v. Lee</u>, 47 F.4th 917, 922 (9th Cir. 2022). Here, Defendants admit

20 | that they "did intentionally send," the email mass solicitation, and it is undisputed that they

21 | operate the website bbiargentina.com. (<u>See</u> Mot. at 4, 14.) The Court finds that both are

22 | considered intentional acts for the purposes of personal jurisdiction analysis.

23 |

24 |

b.    **Expressly Aimed at the Forum.**

Defendants argue that their intentional acts were not expressly aimed at the forum itself and nothing in the record shows that the email mass solicitation or BBI website targeted Washington state or the United States generally. The Court agrees.

"Express aiming requires more than the defendant's awareness that the plaintiff it is alleged to have harmed resides in or has strong ties to the forum, because 'the plaintiff cannot be the only link between the defendant and the forum.'" Ayla, LLC v. Alya Skin Pty. Ltd., 11 F.4th 972, 980 (9th Cir. 2021) (quoting Walden v. Fiore, 571 U.S. 277, 285 (2014)). "Operating an interactive website in conjunction with something more—conduct directly targeting the forum—is sufficient to satisfy the express aiming prong." Herbal Brands, Inc. v. Photoplaza, Inc., 72 F.4th 1085, 1092 (9th Cir. 2023), cert. denied, 144 S. Ct. 693 (2024) (citing Mavrix Photo, Inc. v. Brand Techs., Inc., 647 F.3d 1218, 1229 (9th Cir. 2011).

Defendants' mass solicitation email cannot be the "something more" that can be used to satisfy the express aiming requirement. For example, in Ayla, the Ninth Circuit found that defendant's website, when paired with "an insistent marketing campaign," expressly targeted the United States. 11 F.4th at 980 (quoting Rio Props., Inc. v. Rio Int'l Interlink, 284 F.3d 1007, 1020 (9th Cir. 2002)) There, the "something more" included magazine advertisements in American fashion magazines, an Instagram advertisement featuring the words "ATTENTION USA BABES," and by introducing a "Black Friday" sale. Id. Here, Plaintiffs do not allege that Defendants' mass solicitation emails or the website expressly invoke either Washington state or the United States generally. Indeed, in the lone mass solicitation email submitted by the Parties, not only are Washington and the United States unmentioned, but the listed contact phone number begins with a Canadian area code. (See Declaration of Nadia Binesh (Dkt. No. 30), Ex 1 (listing a phone number beginning with 416, a Toronto-based area code).)

1    Furthermore, the Plaintiffs only allege that Defendants "contacted [Plaintiffs'] customers

2    who reside in the United States, including at least one such customer who resides in

3    [Washington]." (Compl. ¶ 21.) But the Supreme Court has held that the focus in jurisdictional

4    inquiries must be on "the defendant's contacts with the forum State itself, not the defendant's

5    contacts with persons who reside there." Walden, 571 U.S. at 285 (citation omitted). Defendants'

6    contacts with Plaintiffs' customers relates to the resale of Argentinian vineyards; that those

7    customers may reside in the United States or Washington is the type of "scant, fleeting, and

8    attenuated[,]" connection that cannot show that Defendants expressly targeted those particular

9    fora. Axiom, 874 F.3d at 1072 (quoting Holland Am. Line, 485 F.3d at 462.)

10    Because Plaintiffs fail to show that Defendants expressly aimed their intentional acts at

11    Washington or the United States, there is no purposeful direction under Calder. Accordingly, the

12    Court does not have specific personal jurisdiction over the foreign defendants. See

13    Schwarzenegger, 374 F.3d at 807 n.1 ("Because [Plaintiff] has failed to sustain his burden with

14    respect to the second part of the Calder effects test, we need not, and do not, reach the third part

15    of the test."). On that basis, the Court GRANTS Defendant's motion and DISMISSES the

16    complaint for lack of personal jurisdiction.

17    c.    **Caused Harm in the Forum.**

18    In the Ninth Circuit, "a corporation can suffer economic harm both where the bad acts

19    occurred and where the corporation has its principal place of business." Dole Food Co. v. Watts,

20    303 F.3d 1104, 1113 (9th Cir. 2002); see also CollegeSource, Inc. v. AcademyOne, Inc., 653

21    F.3d 1066, 1077 (9th Cir. 2011) ("[A] corporation incurs economic loss, for jurisdictional

22    purposes, in the forum of its principal place of business."). Here, Plaintiffs Vines of Argentina,

23    LLC, and Vines of Argentina International, LLC, are both Delaware corporations, while Plaintiff

24    Vinotourism Argentina, SRL, is an Argentine entity. (Compl. ¶ 1.) However, Plaintiffs concede

that their "primary business is based in Argentina." (Id.) Furthermore, the Court finds that the bad acts at issue here—trade secret misappropriation and copyright infringement—would necessarily occur in (1) Argentina, where Evangelista received the Vines customer list and where Vines would potentially suffer the monetary losses of a client reselling their vineyard share; and/or (2) Canada, where Defendants allegedly misappropriated the Vines customer list for their own financial gains. In short: Plaintiffs can only allege that Defendants' caused harm in Argentina or Canada, not in the United States. This is an alternative and independent basis on which the Court GRANTS the Motion.

**C.    Jurisdictional Discovery**

Plaintiffs argue that rather than dismiss the complaint, the Court should grant them leave to conduct jurisdictional discovery. (Opp. at 16.) Specifically, Plaintiffs claim that jurisdictional discovery will uncover the following:

> (1) the extent to which Defendants targeted Plaintiffs' customers located in Washington as well as in the United States as a whole; (2) the amount of sales Defendants generated from their tortious solicitation of Plaintiffs' customers in the United States and their infringing website advertising; and (3) whether the customers to whom Defendants sell and advertise are primarily located in the United States.

(Id.) During oral argument, counsel for Plaintiffs represented that a deposition of Defendant Binesh may show that the mass emails were expressly targeted at the forum. The Court disagrees. "[A] mere hunch that discovery might yield jurisdictionally relevant facts, or bare allegations in the face of specific denials, are insufficient reasons for a court to grant jurisdictional discovery." Yamashita v. LG Chem, Ltd., 62 F.4th 496, 507 (9th Cir. 2023) (quoting LNS Enters. LLC v. Cont'l Motors, Inc., 22 F.4th 852, 864–65 (9th Cir. 2022) (cleaned up)). "The district court's refusal to provide such discovery will not be reversed except upon the clearest showing that denial of discovery results in actual and substantial prejudice to the

complaining litigant." Id. (quoting Boschetto v. Hansing, 539 F.3d 1011, 1020 (9th Cir. 2008) (cleaned up)). Here, the Court declines to permit jurisdictional discovery. Plaintiffs have had the better part of three years to amend their complaint and adduce additional facts to show that the mass solicitation emails were directly targeted but have failed to do so. On the record, the Court does not find Plaintiffs' claims to the contrary to be anything more than a mere hunch that Defendant Binesh might bite on a jurisdictionally relevant hook. But even if that were the case, no amount of jurisdictional discovery would show that Defendants' alleged bad acts caused sufficient harm in the United States or Washington State in such a way that would allow for the Court to exercise specific personal jurisdiction over the Defendants. Accordingly, the Court DENIES Plaintiffs request for jurisdictional discovery, and DISMISSES the Complaint WITH PREJUDICE.

## CONCLUSION

While Defendants' mass email solicitation constitutes an intentional act, Plaintiffs have failed to show that the act was expressly targeted at either the United States or Washington State. And Plaintiffs cannot show that the alleged harms happened in the forum. Under Calder, Plaintiffs cannot show that Defendant purposefully directed their activity at the forum under either traditional specific personal jurisdiction or under the federal long-arm statute in Rule 4(k)(2). Nor does the Court find that jurisdictional discovery and amendment could salvage Plaintiffs' jurisdictional arguments. Therefore, the Motion is GRANTED, and the Complaint is DISMISSED WITH PREJUDICE.

The clerk is ordered to provide copies of this order to all counsel.

Dated March 31, 2025.

Marsha J. Pechman
United States Senior District Judge